**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| BRIAN KING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:11-CV-963 CAS |
| ) | |
| D'OREAL N. FINNEY, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

Before the Court is plaintiff Brian King's complaint, as well as his motion for preliminary injunction and emergency motion for reconsideration of the Court's August 17, 2011 Order to Show Cause. After reviewing the complaint, the Court finds that it should be dismissed for lack of subject matter jurisdiction, or alternatively, as frivolous, malicious and for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B).

**28 U.S.C. § 1915(e)**

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. An action is frivolous if it lacks even an arguable basis in either law or in fact. Neitzke v. Williams, 490 U.S. 319, 327-328 (1989).

To state a claim, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 562 (2007) (quoted case omitted). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." Twombly, 550 U.S. at 555. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

A court may determine that an action or allegation is "malicious" by referring to objective factors such as the circumstances and history surrounding the filing, the tone of the allegations, and whether probative facts vital to the life of the lawsuit have been alleged. Spencer v. Rhodes, 656 F. Supp. 458, 463 (E.D.N.C. 1987), aff'd 826 F.2d 1061 (4th Cir. 1987) (unpublished Table decision).

In reviewing a pro se complaint under § 1915(e)(2)(B), the Court must give the complaint the benefit of a liberal construction. Haines v. Kerner, 404 U.S. 519, 520 (1972). The Court must also weigh all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless. Denton v. Hernandez, 504 U.S. 25, 32-33 (1992). Alleged facts are "clearly baseless" when they are obviously "fanciful," "fantastic," or "delusional." Id. at 33.

### The Complaint

This action arises out of Mr. King's ongoing difficulties with the Missouri Department of Social Services and its employees, relative to his requests for modification of his child support obligations. Mr. King, who is domiciled in the State of New York, claims that his allegations arise under both federal question and diversity jurisdiction, pursuant to 28 U.S.C. §§ 1331 and 1332, as well as supplemental jurisdiction pursuant to 28 U.S.C. § 1367. In his complaint, plaintiff lists seventeen separate counts for relief all relating to disputes he has had with the mother of his child and the Missouri Department of Social Services over child custody and modification of support orders.

**Factual Background Included in Complaint**

As background to his claims, plaintiff asserts that in 1996, the Missouri Department of Social Services entered an administrative order establishing his paternity with respect to a minor child, whose mother is identified as defendant Tammy Carter. The administrative order set plaintiff's monthly child support obligation at $225.00 per month, which was to be paid to the Department directly.

Plaintiff claims that in June 1997, he was discharged from the United States Marine Corps and that he suffered a dramatic decrease in his monthly income. Plaintiff asserts that in the Fall of 1997, he telephoned unnamed persons at the Department of Social Services requesting a modification of his child support obligations. In late 1997, after his phone calls went unreturned, plaintiff alleges that he mailed a request for modification to the Department. Plaintiff claims that when he did not hear back about his request for modification, he began to voluntarily pay child support, in an unspecified amount, directly to defendant Carter, and that this arrangement continued until 2003.

Plaintiff asserts that in June 2003, defendant Richard Strelinger contacted him by telephone claiming that he owed $15,000 in child support arrears. Plaintiff claims that despite his assertions regarding the direct payments to defendant Carter, defendant Strelinger demanded a lump-sum payment of the money in arrears and, at plaintiff's refusal, stated that he would have to refer the matter for criminal prosecution for unpaid child support. Plaintiff claims that he was a second-year law student at the time and defendant Strelinger taunted him by saying, "Can a person with a felony get a law license?"

In anticipation of referral of the matter for criminal prosecution, plaintiff met with the prosecutor and sent a letter to the Lieutenant Governor of Missouri. Plaintiff claims that in September 2003, the Lieutenant Governor intervened on his behalf with the Department and this prompted a letter from the Director of the Department explaining that the Department was no longer pursuing criminal prosecution for unpaid child support and indicating that a new child support amount would be calculated.

Plaintiff asserts that despite this notification, in February 2004 defendant Patricia Shavers sent plaintiff a letter threatening him with civil prosecution. Plaintiff claims that defendant Shavers sent this letter "in retaliation for Plaintiff's petitioning of government officials" and "to discourag[e] Plaintiff from following up on [the Director's] pledge to process and complete the modification review," but he does not give the reason stated by defendant Shavers in the actual letter.[1] The Court can only surmise that the reason stated by defendant Shavers for writing the letter was her belief, meritless or not, that plaintiff owed child support to defendant Carter. The Court is left to wonder how the matter was worked out, as the background facts do not mention any additional correspondence between plaintiff and the Department until approximately two years later.

Plaintiff claims that sometime in 2006, he received notice from the Illinois Board of Admissions to the Bar ("IBAB") that a child support arrears of $15,000 was appearing on his credit report. Plaintiff asserts that he contacted Department employee defendant John Doe and requested a review and audit of the arrears balance. John Doe purportedly stated that only his supervisor, Jane

---

[1] Plaintiff, in a conclusory fashion, also accuses defendant Shavers of engaging in a conspiracy with defendant Strelinger, to violate his rights and/or retaliate against him. Plaintiff has not included any statements or grounds illustrating intent relating to this alleged conspiracy between Strelinger and Shavers. The complaint is devoid of any factual allegations indicating such a conspiracy.

Doe, could order such a review. Plaintiff states that when he asked Jane Doe to conduct the audit she "arbitrarily and irrationally" refused, "taunting him" by saying he should "write to the Governor again." Accordingly, plaintiff claims that defendant Jane Doe acted unlawfully in depriving him of his rights and in retaliation for his availing himself of his rights under the law. Plaintiff asserts that Jane Doe also engaged in a conspiracy with defendant Shavers to violate his rights. Similar to his conspiracy claim against defendants Shavers and Strelinger, plaintiff's complaint is devoid of any factual allegations that show the existence of such a conspiracy. The only acts done by defendant Shavers mentioned in relation to this claim occurred two years prior. Plaintiff states that when he asked John Doe to provide him with documentation relative to the matter, John Doe "irrationally" refused that request, which plaintiff believes to be a violation of some unspecified rights.

Plaintiff asserts that sometime in 2006, he and defendant Carter appeared before the IBAB's Committee on Character and Fitness and gave testimony regarding his financial contributions to his minor child. Interestingly, plaintiff states that a member of the Committee told him that the committee had spoken to then-Missouri Attorney General, Jay Nixon, and Mr. Nixon confirmed that after an investigation was done into plaintiff's contentions, the arrears balance was erroneous and the Department was in error. Plaintiff does not state, however, how such an investigation came to pass and whether it was actually begun by defendants John and Jane Doe after they verbally refused his initial request. At any rate, plaintiff was approved to receive his Illinois law license.[2]

---

[2] Assuming, as plaintiff alleges, that his claims against defendants Strelinger, Shavers, Jane Doe and John Doe arise under 42 U.S.C. § 1983, any allegations against these defendants relating to actions taken prior to May 2006 are time-barred as they would be subject to Missouri's five-year statute of limitations. See Sulik v. Taney County, Mo., 393 F.3d 765, 766-67 (8th Cir. 2005); Mo. Rev. Stat. § 516.120(4) (2000).

Sometime in 2007, plaintiff filed a "Satisfaction of Judgment" purportedly executed by defendant Carter, in Missouri Circuit Court, to "clear [the Department's] erroneous arrears balance from his credit report." Plaintiff alleges that defendant Carter stated in the filed document that plaintiff had satisfied all past-due child support due to her at that time. Plaintiff claims that after being contacted by defendant Strelinger, defendant Carter withdrew the Satisfaction of Judgment and that her actions were done in conspiracy with defendant Strelinger and for the "improper motive" of depriving plaintiff of his rights. Plaintiff has not included any factual allegations relating to the claimed conspiracy between defendants Strelinger and Carter, and he does not state the manner or circumstances of the contact between these two defendants.

At some unknown time, although presumably still in 2007, plaintiff "filed a court action in Saint Louis County, seeking affirmation of the Satisfaction of Judgment and a court order directing [the Department] to remove the erroneous child support arrears from its books." Plaintiff states that both the Department and defendant Carter entered appearances in this action and opposed his prayers for relief. Plaintiff states that the state court "ultimately granted Plaintiff's requested relief, including the specific relief of ordering [the Department] to correct the erroneous arrears balance." Plaintiff does not state whether he brought any additional claims against the Department, its employees, or defendant Carter in this action. Given that several of his claims for violations of rights and retaliation had purportedly arisen prior to this 2007 court action, the Court assumes that he could have litigated these allegations in the state court action had he chosen to do so.

Plaintiff states that after he filed the state court action, defendant Edith Davis, in violation of his rights and in conspiracy with defendant Carter, "entered an order" increasing his monthly support obligation. Plaintiff has again failed to include any facts surrounding this order that could

6

point to a violation of his rights or the existence of a conspiracy. Plaintiff further asserts, also in a conclusory manner, that after the conclusion of the litigation, defendant Jane Doe, in conspiracy with defendant Carter, maliciously and improperly retaliated against him by entering an administrative wage withholding order against plaintiff.

Plaintiff claims that also during 2007, defendant Carter filed an action seeking sole custody of their minor child and a review of the child support obligations owed by plaintiff.[3] Importantly, plaintiff acknowledges that he opposed plaintiff's claims and that during the proceedings he filed a motion in which he "set forth evidence of the arbitrary, irrational, and retaliatory acts Plaintiff had experienced at the hands of [the Department] employees." Thus, this was at least the second court action in which plaintiff had an opportunity to raise his claims against the defendants in this action who had allegedly acted unlawfully.

Plaintiff states that at some unknown conclusion of the action, the state court awarded joint custody and vacated the 2007 order by defendant Davis increasing his child support obligation. Plaintiff states that he moved to New York shortly after this action.

According to the complaint, it was not until July 2010 that plaintiff had any additional dealings with defendant Carter or the Department of Social Services. In that month, plaintiff requested a modification of his child support obligation, as he had been laid off from his employer in December 2009. Plaintiff states that by letter dated July 16, 2010, defendant Davis requested documentation relating to the changed circumstances entitling him to a modification. Plaintiff states

---

[3]The Court has found, through the online database Missouri Case.net, an action filed in St. Louis County, Missouri family court against plaintiff Brian King by defendant Carter, on behalf of their minor child, for child support. See Carter-King, et al. v. King, No. 2107FC-08782 (Sept. 20, 2007). Plaintiff filed a counterclaim in this action, but the Court is unable to ascertain exactly what his counterclaims entailed.

that he provided the documentation to Davis on July 29, 2010, but on September 22, 2010, or "fifty-five" days after he received confirmation that the documentation had reached the Department, Davis again requested the same information. Plaintiff asserts that he sent the requested materials to defendant Davis again on September 24, 2010.

Despite this fact, plaintiff claims that on October 6, 2010, he received a letter from defendant D'Oreal Finney stating that his "voluntary cooperation" was "preferred" and "threatening" him with various prosecutions and/or license revocations. Plaintiff does not state what this letter referred to, but the Court surmises that it once again it concerned unpaid child support. Regardless, it is plaintiff's contention that defendant Finney, acting in concert with defendant Davis, sent him the "threatening letter" because he had requested a modification review. Plaintiff has not included any facts relating to this claim, failing even to state that defendants Davis and Finney knew one another or worked in the same office in the Department.[4] Plaintiff says that he contacted defendant Davis by letter approximately ten days later to renew his modification request, and to express the "inappropriateness" of defendant Finney's letter, but he does not state whether he heard back from defendant Davis.

Plaintiff states that in November 2010, he received a "Notice of Direct Withholding Order from [the Department], indicating that [the Department] had contacted the New York Department of Labor and directed it, pursuant to the Uniform Interstate Family Support Act (UIFSA), to withhold a portion of Plaintiff's unemployment payments and remit them to [the Department]."

---

[4]The Court has not seen this alleged correspondence, as plaintiff has not attached the letters to his complaint or any other document filed in this action. It is plausible that defendant Davis worked on requests for modifications, while defendant Finney worked on collections of unpaid child support. This, of course, is mere speculation, as no facts concerning these defendants' knowledge of one another have been included in the complaint.

8

Again, without any facts to bolster his claims, plaintiff makes the conclusory allegations that defendants Finney and Davis acted in concert to deprive him of his constitutional rights and/or retaliate against him "for his complaints about the delays and threats that attended the modification procedure."

Plaintiff states that in March 2011, defendant Margaret Brandes sent plaintiff a letter "directing Plaintiff to justify the 2008 court judgment that vacated [the Department's] 2007 retaliatory modification of Plaintiff's child support obligation." Plaintiff's additional factual allegations against defendant Brandes are stated in his complaint as follows:

> More specifically, Defendant Brandes stated in the letter that the judge in the action had "determined the presumed child support obligation was unjust or inappropriate [and] adjusted the amount," and that MDSS therefore could not process Plaintiff's modification request. Defendant Brandes further stated in the letter that Plaintiff's request for a modification review would not be processed until Plaintiff provided her with (1) the reason why the presiding judge adjusted the monthly obligation, and (2) the reason why the judge entered an order in the amount of $896.00 when the worksheet submitted by the parties indicated an amount of $896.23.

Complaint at 15, ¶ 58.

Plaintiff, in a conclusory fashion, asserts that defendant Brandes requested these "deceptively fictional legal requirements" because he had made allegations against the Department in the 2008 lawsuit, and to intimidate him into withdrawing his request for modification. Plaintiff also alleges, without the benefit of any additional facts, that defendant Brandes and defendant Davis had entered into a "common plan" to violate his rights in this way.

Plaintiff states that he responded to defendant Brandes' request by stating that he did not know why the state court judge had entered the orders he did. Plaintiff claims that defendant Brandes then denied his request for modification on May 6, 2011, based on "the inexplicable grounds that New York attorneys have the ability to earn $5,858.34 per year." Plaintiff claims that

9

when he attempted to contact defendant Brandes by phone, he was not able to reach her at the erroneous telephone number she provided. Again, in a conclusory fashion, plaintiff asserts that defendant Brandes denied his request for modification in "retaliation" for the exercise of his rights and in "an agreed upon common plan" with defendant Davis to deprive plaintiff of his rights.

Plaintiff states that as of the date of the filing of his complaint, he has not been granted a modification of his child support obligation. There is no indication in the record whether plaintiff has pursued an administrative appeal of this denial or pursued this matter in state court.

**Plaintiff's Claims**

Plaintiff claims that several workers at the Missouri Department of Social Services violated his civil rights, pursuant to 42 U.S.C. §§ 1983 and 1985, during the pendency of his claims for modification of his child support obligations. In sum, plaintiff claims that the seven named defendants (and John and Jane Doe) employed by the State of Missouri[5] violated his constitutional rights through: 1) denial of government services; 2) selective enforcement of laws; 3) deprivation of procedural due process rights; 4) deprivation of First Amendment rights to petition government, access courts and avail oneself of free speech; 5) deprivation of rights conferred under Title IV-D of the Social Security Act; 6) conspiracy to deprive another of federal or constitutional rights; 7) retaliation against another for exercising rights; 8) failure to take sufficient remedial action upon receiving notice of a subordinate employee's pattern of unconstitutional acts; 9) failure to train

---

[5]The following defendants are alleged to be employees of the Missouri Department of Social Services: D'Oreal Finney, Margaret Brandes, Richard Strelinger, Ronald Levy, and Edith Davis. Plaintiff has also listed a Jane and John Doe as additional defendants employed by the Missouri Department of Social Services. It is not entirely clear whether defendant Patricia Shavers was, or is, an employee of the Department of Social Services. However, from the allegations concerning defendant Shavers, noted in paragraphs 26, 27 and 31 of plaintiff's complaint, the Court presumes that defendant Shavers was most likely also employed by the Department of Social Services.

subordinate employees to prevent them from acting in an unconstitutional manner; and 10) failure to adopt policies to prevent subordinate employees from depriving others of their constitutional rights. Plaintiff also raises state law claims against several Department employees, under this Court's diversity jurisdiction, 28 U.S.C. § 1332, and/or supplemental jurisdiction, 28 U.S.C. § 1367, for fraudulent misrepresentation and tortious interference with contractual relationship.

With respect to defendant Carter, in addition to the claims of deprivation of rights and/or retaliation and conspiracy to deprive him of his rights, plaintiff also alleges the state law claim of injurious falsehood.

In his request for relief, plaintiff seeks compensatory damages in the amount of $580,000.00, punitive damages, nominal damages, declaratory relief, injunctive relief and attorney's fees and costs.

## Discussion

On August 17, 2011, the Court ordered plaintiff to show cause why this matter should not be dismissed for lack of subject matter jurisdiction as a result of the domestic relations exception to federal court jurisdiction. As the Court noted in its earlier memorandum, federal courts generally have no jurisdiction over domestic relations matters. See Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992); Ex parte Burrus, 136 U.S. 586, 593-94 (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States."); Kahn v. Kahn, 21 F.3d 859, 860-61 & n.1 (8th Cir. 1994).

In his response brief, plaintiff argues that his case really arises under Title IV-D of the Social Security Act, thus "federal question jurisdiction under § 1983 is a certainty in the instant case." In support of his argument, plaintiff cites to a class action, reviewed by the Eighth Circuit Court of

11

Appeals, in which non-custodial parents alleged that the Missouri Department of Social Services was deliberately ignoring federal regulations mandating a specific method for calculating child support.  See Jackson v. Rapps, 947 F.2d 332, 333 (8th Cir. 1991).

The issue in Jackson was not, as plaintiff contends, whether a federal court had jurisdiction over the non-custodial parents' claims.  There, all parties agreed that the court had federal question jurisdiction to decide whether a Missouri state statute violated a federal mandate included in the Social Security Act.  Id.  Despite plaintiff's conclusory allegation that he has suffered a deprivation of rights conferred under Title IV-D of the Social Security Act, he has not articulated how his rights under that Act have been affected.[6]

In other words, plaintiff has not stated, as the plaintiffs did in Jackson, that the State of Missouri is violating a federal mandate contained in the Social Security Act in the calculation of his child support obligation or that it has deliberately disregarded a federal regulation.  Rather, plaintiff's pleading reads like a "customer complaint" based on his dissatisfaction with the treatment he has received from Missouri state employees.  What plaintiff is truly seeking is for this Court to act as a reviewing supervisor and force the Department to change its decision and modify his support obligations, while simultaneously punishing Department employees and his co-parent for what he perceives as improper behavior on their parts.

---

[6]In his motion for preliminary injunction, plaintiff asserts that the Court should require defendants to comply with a certain federal regulation relating to the time periods allowed for review of a request for modification.  However, plaintiff has not asserted that defendants violated this regulation within the body of his complaint.  Where a motion for preliminary injunction is different from the claim raised and the relief requested in the underlying complaint, such assertions might support additional claims against the same officials but they cannot provide the basis for a preliminary injunction in the suit before the Court.  Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam).

It is this Court's conclusion that plaintiff's claims are so interwoven with state child custody proceedings that subject matter jurisdiction does not lie in this Court. A careful reading of plaintiff's allegations in his complaint, as well as his accompanying motion for preliminary injunction and "emergency motion," illustrates that his issues with state workers have arisen as a direct result of his request for child support modifications.

The jurisdictional determination underlying the domestic relations exception must be based on the nature of the claim at issue, not merely the relationship between the parties. Hildebrand v. Lewis, 281 F.Supp.2d 837 (E.D. Va. 2003). It is plain that the true relief plaintiff seeks is a modification of his child support obligation and that this action is a mere pretense for attainment of that goal. Compare, e.g., Danforth v. Celebrezze, 76 F. App'x 615 (6th Cir. 2003) (§ 1983 claim was in fact a mere pretense for obtaining federal review of the underlying merits of the domestic relations dispute); Jagiella v. Jagiella, 647 F.2d 561 (5th Cir. 1981) (tort damages action was a mere pretense and the suit was actually concerned with custody issues).

For example, in his motion for preliminary injunction, the relief plaintiff requests is an expedited accounting of "Plaintiff's corrected child support arrears arising after July 16, 2010" and an order from this Court requiring defendants to "cease any and all efforts to collect Plaintiff's past-due and/or existing child support obligations arising after July 16, 2010." In essence, plaintiff is asking the Court to ascertain his child support obligation and concurrently find that defendants acted unlawfully in denying his requests for modification, or in failing to get back to him regarding the requests in what he perceives to be a timely manner. Because plaintiff alleges that the defendants acted in a retaliatory manner when denying his requests for modification, in reviewing plaintiff's claims for relief, the Court would have to inquire deeply into the propriety of the state court

13

processes, or first ascertain whether defendants had a lawful reason to deny plaintiff's requests. This is no doubt a matter which falls squarely within the ambit of state law. See Overman v. United States, 563 F.2d 1287, 1292 (8th Cir. 1977) ("There is, and ought to be, a continuing federal policy to avoid handling domestic relations cases in federal court in the absence of important concerns of a constitutional dimension.  Such cases touch state law and policy in a deep and sensitive manner, and as a matter of policy and comity, these local problems should be decided in state courts.") (internal citations and quotation omitted).

Plaintiff argues that the domestic relations exception can only be applied in diversity jurisdiction cases, and that because he has brought claims under the Social Security Act and 42 U.S.C. § 1983, the Court cannot decline to exercise jurisdiction over this matter.[7]  As the Court noted above, a review of plaintiff's complaint shows that plaintiff has not truly brought a claim under the Social Security Act, as he has not alleged that the Department violated a federal law in the calculation of his support obligation.  Moreover, the Court believes that plaintiff's claims brought pursuant to 42 U.S.C. § 1983 fail to state a claim upon which relief may be granted.  See Iqbal, 129 S.Ct. at 1949.

The majority of plaintiff's allegations demonstrate only that his dealings with the Missouri Department of Social Services have been difficult and frustrating.  Plaintiff's conclusory allegations and assumptions as to defendants' states of mind when they did not return phone calls, sent him

---

[7]Plaintiff also argues that the domestic relations exception cannot apply because "he relies primarily upon federal question – not diversity of citizenship – jurisdiction in this suit." Pl.'s Mem. of Law in Response to Show Cause Order at 4.  This argument ignores the fact that the Complaint alleges the existence of diversity jurisdiction under 28 U.S.C. § 1332, pleads jurisdictional facts with respect to the parties' citizenship and the requisite amount in controversy, and contains state law claims based on the same facts as the purported federal claims.

correspondence requesting documents, or entered modification orders against him, assume a motive or evil intent that he has not included factual allegations to sustain. Rather, plaintiff's allegations are nothing more than a "[t]hreadbare recital[] of the elements of a cause of action" and are not entitled to an assumption of truth. Id.

Because there are no non-conclusory allegations, after the time-bar date of May 2006, that would show the defendants acted with discriminatory or retaliatory intent with respect to plaintiff and his requests for modifications of his child support obligations, the complaint "stops short of the line between possibility and plausibility of 'entitlement to relief'" under § 1983. Twombly, 550 U.S. at 557; Iqbal, 129 S. Ct. at 1949. Additionally, plaintiff's allegation that defendants discriminated and/or retaliated against him because of purposeful availment of his rights under state law is not the most plausible conclusion in light of the factual background, which illustrates a long and frustrating relationship among the parties, relative to plaintiff's child support obligations and payment thereof. Cf. Iqbal, 129 S. Ct. at 1950, 1951-52.

Finally, plaintiff has not sufficiently alleged facts to support a claim of conspiracy. Moreover, § 1985 proscribes five different types of conspiracies, but only two could apply to the facts here: (1) conspiracies to interfere with the administration of justice in state courts (second clause of 42 U.S.C. § 1985(2)); and (2) private conspiracies to deny any person enjoyment of "equal protection of the laws" and "equal privileges and immunities under the laws" (first clause of 42 U.S.C. § 1985(3)). See Harrison v. Springdale Water & Sewer Comm'n, 780 F.2d 1422, 1429 (8th Cir. 1986). To state a claim under either of these types of § 1985 conspiracy, plaintiff must allege that the conspiracy was predicated upon a class-based, invidiously discriminatory animus, but the

complaint is devoid of any such allegations.  See id.; see also Kush v. Rutledge, 460 U.S. 719, 724–26 (1983); Griffin v. Breckenridge, 403 U.S. 88, 102 (1971).

As a result, the Court finds that plaintiff's § 1983 and § 1985 allegations fail to state a claim, were added as a mere pretext in this action, and cannot afford a basis for federal question jurisdiction.

Even if plaintiff had properly articulated a claim under federal law, and thus federal question jurisdiction existed, the Court is not convinced that the domestic relations exception would not apply.  It is true that the exception is usually invoked in diversity jurisdiction cases, and it bars plaintiff's claims in this matter to the extent they are based on diversity of citizenship.  However, some courts have found it applicable to federal question cases as well.  See, e.g., Firestone v. Cleveland Trust Co., 654 F.2d 1212, 1215 (6th Cir. 1981) ("Even when brought under the guise of a federal question action, a suit whose substance is domestic relations generally will not be entertained in a federal court.") (citation omitted).  The modern view is that the domestic relations exception arises out of statutory rather than constitutional origin.  See 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3609, at 491-92 (2d ed. 2006); Jones v. Brennan, 465 F.3d 304, 307 (7th Cir. 2006).

> When Congress in the Judiciary Act of Sept. 24, 1789, § 11, 1 Stat. 73, conferred on the federal courts a diversity jurisdiction limited to "all suits of a civil nature at common law or in equity," which is narrower than Article III's definition of the federal judicial power, probate and domestic relations were - the courts interpreting the statute held - excluded because they were not thought to be part of either common law or equity. Congress used the same language when in the Judiciary Act of March 3, 1875, § 1, 18 Stat. 470, it conferred a general federal-question jurisdiction on the federal courts, by which time the probate and especially the domestic-relations exceptions had become established in the case law.  The implication is that the exceptions were probably intended to apply to federal-question cases too.  And there is no indication that the current formula in both jurisdictional

>statutes-"all civil actions," 28 U.S.C. §§ 1331, 1332(a)-was intended to repeal the exceptions.

Jones, 465 F.3d at 307 (internal citations and citations omitted).

As the Seventh Circuit concluded in Jones, there is simply no good reason to give a different meaning to the identical language in the diversity and federal question statutes. "The best contemporary reasons for keeping federal courts out of the business of probating wills, resolving will contests, granting divorces and annulments, administering decedents' estates, approving child adoptions, and the like . . . are as persuasive when a suit is filed in federal court on the basis of federal law as when it is based on state law." Id. Thus, the Court sees no bar in applying the domestic relations exception even if federal subject matter jurisdiction existed in this case.

As an alternative basis for dismissal, the Court finds that plaintiff's claims are barred by the principles of collateral estoppel and res judicata. "[A]n issue may not be relitigated in a second lawsuit where that issue had previously been litigated in a prior lawsuit which involved the same cause of action. Furthermore, issues which might have been raised in the first lawsuit may not be raised in a second lawsuit arising out of the same cause of action." Robbins v. District Court of Worth County, Iowa, 592 F.2d 1015, 1017 (8th Cir. 1979); see also Edwards v. City of Jonesboro, 645 F.3d 1014, 1019-20 (8th Cir. 2011); Roboserve, Inc. v. Kato Kaguku Co., Ltd., 121 F.3d 1027, 1034 (7th Cir. 1997); Oldham v. Pritchett, 599 F.2d 274, 278 (8th Cir. 1979).

In reading plaintiff's complaint, it is obvious that plaintiff's claims could have been raised, and as to some allegations actually were raised, in one of the several state court actions either initiated by plaintiff or in which plaintiff was named as a respondent or defendant. Thus, the Court additionally declines to hear the instant case, finding that it is barred by the principles of collateral estoppel and res judicata. See Edwards, 645 F.3d at 1020; Oldham, 599 F.2d at 278.

17

Moreover, the Court feels compelled to add that there is no doubt plaintiff could have sought an appeal of the most recent denial of his modification request, or tried to pursue the state court channels for review of the decision. Perhaps plaintiff has already done so and has not included details of such an appeal in his complaint. Regardless, plaintiff has given no indication that his claims cannot receive a full and fair hearing in state court, and it would appear that the state courts and state administrative agencies, where the custody and prior modification proceedings were held, would be better fora in which to handle the issues that have arisen in the course of plaintiff's interactions with defendants.

In Younger v. Harris, 401 U.S. 37, 46 (1971), the Supreme Court directed federal courts to abstain from hearing cases where "the action complained of constitutes the basis of an ongoing state judicial proceeding, the proceedings implicate important state interests, and an adequate opportunity exists in the state proceedings to raise constitutional challenges." Harmon v. City of Kansas City, Mo., 197 F.3d 321, 325 (8th Cir. 1999); see also Fuller v. Ulland, 76 F.3d 957, 959 (8th Cir. 1996). To the extent that plaintiff is challenging ongoing state child support modification proceedings, such claims are subject to dismissal under the Younger abstention doctrine.

In light of the tone of plaintiff's filings before this Court, there is yet another ground for dismissal of the instant action - maliciousness, as noted in 28 U.S.C. § 1915. A court may determine that an action or allegation is "malicious" by referring to objective factors such as the circumstances and history surrounding the filing, the tone of the allegations, and whether probative facts vital to the life of the lawsuit have been alleged. Spencer, 656 F.Supp. at 463. An action is malicious when it is undertaken for the purpose of harassing litigants and not for the purpose of vindicating a cognizable right. Id. at 461-63.

The circumstances and history surrounding the filing of this action demonstrate that the complaint is legally malicious. First, as noted above, the Court believes that plaintiff is largely attempting to relitigate the claims that were adjudicated against him in the various state administrative and court processes. Also, as stated previously, plaintiff is barred from relitigating those claims because of the doctrines of collateral estoppel and res judicata. Second, the circumstances of the instant filings and the tone of the allegations demonstrate that plaintiff is attempting to punish those persons involved with the previous interactions and processes, including his co-parent, defendant Carter. The Court therefore finds that this action has been filed for an improper purpose, and the Court is required to dismiss this action as malicious pursuant to 28 U.S.C. § 1915(e)(2)(B).[8]

Finally, the Court will address plaintiff's request for preliminary injunction. As the Court has found that it lacks jurisdiction over this matter or, alternatively, that plaintiff's complaint is subject to dismissal under § 1915, the Court will deny plaintiff's motion for preliminary injunction without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for reconsideration of the Court's August 17, 2011 Memorandum and Order is **DENIED**. [Doc. 12]

---

[8]In addition, the Court finds that several of plaintiff's allegations are "factually frivolous." For example, plaintiff alleges that the defendant employees of the State of Missouri, acting in concert with defendant Carter, have engaged in a conspiracy against him over the course of the last eight years to increase (or at least to refuse to decrease) his child support obligations. This allegation falls into the category of obviously fanciful and delusional and is clearly baseless under Denton. See Denton v. Hernandez, 504 U.S. 25, 33 (1992).

**IT IS FURTHER ORDERED** that plaintiff's motion for preliminary injunction is **DENIED** without prejudice. [Doc. 6]

**IT IS FURTHER ORDERED** that this case will be dismissed for lack of subject matter jurisdiction or, alternatively, pursuant to 28 U.S.C. 1915(e)(2)(B) for failure to state a claim upon which relief can be granted, and/or as frivolous and malicious.

 

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  18th  day of October, 2011.